OPINION
Defendant-appellant John Steven Remley appeals his conviction and sentence in the Stark County Court of Common Pleas on one count of intimidation of a crime witness, in violation of R.C.2921.04. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On January 12, 1998, appellant was arrested and charged with intimidation of a crime witness. On February 9, 1998, the Stark County Grand Jury indicted appellant on one count of intimidation of a crime witness, in violation of R.C. 2921.04; one count of telephone harassment, in violation of R.C. 2917.21; one count of aggravated menacing, in violation of R.C. 2903.21; and one count of violating a protection order, in violation of R.C.2919.27.[1] At his arraignment on February 13, 1998, appellant entered pleas of not guilty to the charges contained in the indictment. Appellant waived his speedy trial rights. The trial court scheduled a jury trial for April 27, 1998.
At trial, Officer Brian Kress of the Perry Township Police Department testified he received a call at approximately 6:30 p.m. on January 11, 1998, regarding a domestic dispute. The officer proceeded to the home of Darla Davis. After speaking with Davis, Officer Kress had her fill out an affidavit form. Based upon the information in the affidavit, Officer Kress, with the assistance of Officer Wiseman, arrested appellant for domestic violence.
Zunna Cruse, a domestic violence legal advocate with the Massillon Municipal Court, testified she was with Darla Davis at appellant's arraignment on January 12, 1998. Cruse stated her job during the arraignment process was to assist Davis and to inform the court the victim was in need of a temporary protection order. When appellant's case was announced, Davis joined Cruse at a table behind the podium at which appellant stood. When Davis sat down, Cruse noticed she was very nervous and appeared to be "a little afraid." After appellant entered his plea, Cruse noticed Davis seemed more frightened. Cruse arranged to have a police officer escort Davis out of the courtroom.
Approximately 45 minutes later, Cruse saw Davis in the police department. Cruse testified Davis' demeanor had changed. She described the victim as, "[r]eally drastically upset at that time." Cruse's attempts to calm Davis down were unsuccessful.
Officer Lana Blair of the Massillon Police Department testified she was sent to Courtroom 2 in the Massillon City Court to escort Davis to her vehicle. When Blair arrived in the courtroom, Davis was emotionally distraught, crying, shaking, and upset. Officer Blair took Davis to the police department in order to have the victim complete a report. Once in the police department, Blair left Davis in a secured area and went to find Cruse. Blair returned a short time later to find Davis crying and shaking. The officer finished taking the report, calmed the victim down, and escorted Davis to her vehicle. Based upon her conversation with Davis, Officer Blair filed charges against appellant, which included intimidation of a witness.
The State called Darla Davis as its final witness. Davis testified she was living with appellant and the two were engaged to be married. Their relationship lasted approximately 2 ~ years. Davis described the changes which occurred over the course of the relationship. She described the financial troubles the couple experienced.
In October, 1997, Davis returned home to find appellant drunk. When Davis informed appellant his car needed $800.00 worth of work, the couple started to argue. Appellant left the residence. He returned home shortly thereafter telling Davis to give him money out of the safe. After Davis told appellant there was no money in the house, appellant grabbed Davis by the neck and started to choke her. As she tried to push him off of her, appellant squeezed her head. Although he never punched her, the force of pressure with which he choked her left a hand print on her neck and a black and blue on her face for approximately three weeks. When Davis broke free, she telephoned the police. Davis did not tell the police appellant threatened her life. Appellant admitted to the police he threatened and choked Davis. As a result, the police arrested appellant.
When Davis finished testifying about the incident in October, 1997, the trial court gave the following instruction:
 Ladies and Gentlemen, I will give you a cautionary instruction at this time with regard to the testimony you have just heard.
 It is not to be considered by you to show the character of the Defendant that he acted in conformity therewith.
 The only limited purpose for which that evidence was allowed is to show the state of mind of this woman at the time in January when the alleged incident took place in the Massillon Municipal Court as well as any motive or plan on the part of the Defendant. It is for that limited purpose only.
Transcript of the Proceedings, Vol. II, at 157-158.
After the October, 1997 incident, Davis communicated with appellant regarding buying her car back from him. During their conversations, Davis informed appellant she could not become involved with him.
Over the course of next several months, the couple continued to fight and argue. While driving home on January 11, 1998, Davis observed appellant pass her in his vehicle. Davis proceeded to Summerdale Park. When she stopped her vehicle, appellant pulled up behind her. Davis informed appellant she wanted nothing to do with him. As Davis rolled up the car window, appellant punched the car and the window. Again, Davis told appellant she wanted nothing to do with him. Prior to leaving, appellant advised Davis, "You better watch it now, bitch, I know how to get to you." Davis returned home and telephoned the police. An officer responded and Davis completed a police report.
Later that evening, Davis checked the voice mail on her cellular telephone and found six messages from appellant. Appellant's messages informed Davis she "[h]ad exactly two hours to return his phone call or a man would do what a man would have to do." Davis again called the police. Subsequently, appellant was arrested.
On January 12, 1998, Davis arrived at court before appellant. Davis positioned herself in the front row of seats. When appellant arrived, he sat in the second row back. Davis repeatedly looked at appellant. At one point when she looked back, appellant gestured in a choking action with his hands to his throat. Another time, appellant twisted his hands together. Because of the previous incident, appellant's actions scared Davis. When appellant's case was called, appellant stood at the podium with his back to Davis. Davis testified appellant gave her dirty looks and glares.
While Davis awaited the police escort, appellant phoned her on her cellular telephone. He told her she was a "Dead bitch" and then hung-up. When Officer Blair arrived, Davis accompanied her to the police department to fill out a report. During Officer Blair's absence, Davis received another call on her cellular telephone from appellant. When Officer Blair returned, Davis filled out another police report. The officer and Davis returned to the courtroom and Davis spoke with the prosecutor.
After hearing all the evidence and deliberations, the jury found appellant guilty of intimidation of a crime witness. The trial court ordered a presentenced investigation. On May 27, 1998, the trial court sentenced appellant to a definite term of three years incarceration.
It is from this conviction and sentence appellant prosecutes this appeal raising the following assignments of error:
 I. THE JUDGMENT RENDERED BY THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY ADMITTING EVIDENCE OF APPELLANT'S ALLEGED PRIOR ACTS OF DOMESTIC VIOLENCE AGAINST DARLA DAVIS AND THEREBY AFFECTED THE SUBSTANTIAL RIGHTS OF APPELLANT.
 III. THE TRIAL COURT ERRED BY SENTENCING APPELLANT TO A DEFINITE TERM OF 3 YEARS FOR HIS CONVICTION OF A THIRD DEGREE FELONY SINCE APPELLANT HAS NEVER BEFORE BEEN SENTENCED TO PRISON AND SENTENCING HIM TO THE SHORTEST TERM WOULD NOT DEMEAN THE SERIOUSNESS OF THE OFFENSE OR FAIL TO ADEQUATELY PROTECT THE PUBLIC.
 I
In his first assignment of error, appellant maintains the jury's verdict was against the manifest weight and sufficiency of the evidence.
In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 Jenks, supra, at paragraph two of the syllabus.
When apply the aforementioned standard of review to the casesub judice, based upon the facts noted supra, we do not find, as a matter of law, appellant's conviction was based on insufficient evidence.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997), 78 Ohio St.3d 380,387, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
Upon review of the entire record, we find the jury did not clearly lose its way so as to result in a manifest miscarriage of justice. The jury was free to accept or reject any or all of the testimony of the witnesses. Davis' testimony alone, if believed the jury, was sufficient to support the conviction. Furthermore, the testimony of the other witnesses inferentially corroborates Davis' testimony. Accordingly, we do not disagree with the jury's resolution of the testimony.
Appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant contends the trial court erred and abused its discretion in admitting prior acts evidence.
The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173. Therefore, we will not disturb a trial court's evidentiary ruling unless we find said ruling to be an abuse of discretion, i.e., unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. State v. Adams (1980),62 Ohio St.2d 151, 157.
Both the Rules of Evidence and the Ohio Revised Code set forth certain circumstances under which evidence of prior bad acts may be admissible at trial. Specifically, Evid. Rule 404(B) provides:
 (B) Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Further, R.C. 2945.59 provides:
 In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior to subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
Interpreting the above provisions, the Ohio Supreme Court has held that evidence of other acts is admissible if (1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. State v. Lowe (1994), 69 Ohio St.3d 527,530. The Court further noted Evid.R. 404(B) and R.C.2945.59 are to be construed against admissibility and the standard for determining admissibility of such evidence is strict. Id. See,also, State v. Broom (1988), 40 Ohio St.3d 277, syllabus paragraph one.
Over objections, the trial court permitted Darla Davis to testify regarding an incident in October, 1997, during which appellant engaged in acts of domestic violence upon her. Davis testified, during this attack, appellant choked her and squeezed her head. Regarding appellant's behavior at his January 12, 1998 arraignment, Davis stated appellant made gestures at her as if choking himself.
Based upon our review of the testimony, we find the evidence of the October, 1997 incident of domestic violence is relevant to give understanding and meaning to appellant's behavior at his arraignment on January 12, 1998, and to Davis' reaction thereto. We find the trial court properly determined this evidence was relevant and its probative value substantially outweighed any possible prejudice. The trial court gave a cautionary instruction to the jury regarding its evaluation of the testimony. Accordingly, we find the trial court did not abuse its discretion in admitting evidence of appellant's prior acts of domestic violence.
Appellant's second assignment of error is overruled.
 III
In his third assignment of error, appellant argues the trial court erred in sentencing him to a definite term of three years for his conviction. Specifically, appellant takes issue with the trial court's failure to make a specific finding, "The shortest prison term would demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others" as required by R.C. 2929.14(B). We agree.
Pursuant to S.B. No. 2, the Revised Code sets forth guildlines a trial court is required to utilize when rendering a sentence. R.C. 2929.14(B) specifically provides:
 Except as provided in division (C), (D)(2), (D)(3), or (G) of this section or in Chapter 2925. of the Revised Code, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.
(Emphasis added).
In the case sub judice, a review of the record indicates the trial court did not make the required findings of fact prior to imposing a prison term. After listening to the State read a statement by Davis, the trial court stated:
 Mr. Remley, the Court is in receipt of the presentence investigation. And based on that report, it would be sentence of this Court that you be sentenced to a definite sentence of three years in an Ohio penal institution. You will be given credit for time served to date.
Tr. of Sentencing, May 27, 1998 at 8.
Pursuant to R.C. 2929.14(B), the trial court was required to specifically find the shortest prison term would demean the seriousness of appellant's conduct or would not adequately protect the public from future crimes by appellant. The trial court failed to do this.
Appellant's third assignment of error is sustained.
The conviction of the Stark County Court of Common Pleas is affirmed. The sentence rendered by the Stark County Court of Common Pleas is hereby vacated and the matter is remanded for resentencing consistent with this opinion and the law.
By: Hoffman, J., Farmer, P.J. and Gwin, J. concur.
[1] The State subsequently dismissed the counts of telephone harassment, aggravated menacing, and violating a protection order.
For the reasons stated in our accompanying Memorandum-Opinion, the conviction of the Stark County Court of Common Pleas is affirmed. The sentence of the Stark County Court of Common Pleas is vacated and this case ordered remanded to the trial court for resentencing in accordance with this opinion and the law. Costs assessed to appellant.